**POSTED ON THE WEBSITE**

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

In re:

ERNESTO PATACSIL and MARILYN EMBRY PATACSIL,

            Debtors.

Case No. 20-23457-A-7

---

JOSEPH CABARDO et al.,

            Plaintiffs,

    V.

ERNESTO PATACSIL et al.,

            Defendants.

Adv. No. 20-02167-A

FEC-4

**MEMORANDUM**

Argued and submitted on April 18, 2023

at Sacramento, California

Honorable Fredrick E. Clement, Bankruptcy Judge Presiding

Appearances:    Stan S. Mallison, Hector R. Martinez, Heather Hamilton, Mallison & Martinez and John R. Grele for plaintiffs Joseph Cabardo, Donnabel Suyat, Marissa Bibat, Mactabe Bibat, Renato Manipon, Alicia Bolling, Carlina Cabacongan, John Dave Cabacongan, Mallison & Martinez, and the Law Offices of John R. Grele; Charles L. Hastings, Natali A. Ron, Law Offices of Hastings & Ron for defendants Ernesto Patacsil and Marilyn Embry Patacsil

Article III standing is jurisdictional; it requires an injury in fact, traceable to the defendant's conduct that will likely be redressed by a favorable decision. Acting as private attorneys general, eight employees of the defendants sued them in District Court for violations of California labor laws; the employees obtained a substantial judgment, e.g., almost $2 million, against the defendants for back wages, civil penalties arising from those violations, and attorneys' fees. As to the unpaid wages portion of the judgment, the employees are the real parties in interest; as to the civil penalties, the State of California is the real party in interest. After the employers filed bankruptcy, the employees sought to except the State of California's portion of the judgment from discharge as a penalty "payable to and for the benefit" of the government. 11 U.S.C. § 523(a)(7). Do the employees have Article IIII standing to assert the State of California's interests in the judgment?

**I.    FACTS**

Ernesto Patacsil and Marilyn Embry Patacsil ("Patacsils") did business as Patacsils Care Homes. Patacsil Care Homes operated seven residential care facilities for mildly impaired developmentally disabled persons. To assist them, the Patacsils employed the plaintiffs and others to act as caregivers for their residents. Patacsils did not pay their employees in an amount or manner consistent with California's wage and hours laws.

Aggrieved by the Patacsils' treatment and after giving notice to the California Labor and Workforce Development Agency, eight employees and/or former employees ("the Cabardo plaintiffs") sued the Patacsils in District Court acting under the Private Attorney General Act, Cal. Labor Code § 2698 et seq. (hereinafter also referred to as "PAGA"), to

1   collect damages for wages and hours violations.  They also sought

2   Labor Code penalties for the Patascils' violations of the labor laws.

3   The employees were represented by the law firm of Mallison & Martinez

4   and by John R. Grele ("Grele").  After trial, the District Court

5   awarded the Cabardo plaintiffs damages of $893,815, penalties of

6   $79,524 and attorneys' fees of $1,077,218.  Compl. ¶ 8, ECF No. 1.

7        Sometime later, the Patacsils ceased doing business.  *Id.* at ¶

8   33.

9        Predictably, the Patacsils filed a Chapter 7 bankruptcy.

10       In response, the eight employees, Mallison & Martinez, and Grele

11  filed an adversary proceeding to protect their judgment from

12  discharge. They advanced two theories for excepting their debt.

13  First, the Cabardo plaintiffs seek to perfect their rights in a debt

14  (here a judgment) that they contend was incurred willfully and

15  maliciously.  11 U.S.C. § 523(a)(6), (c)(1).  Second, the Cabardo

16  plaintiffs and their counsel seek to determine the dischargeability of

17  the civil penalties, i.e., $79,524, as a debt "payable and for the

18  benefit of a governmental unit." 11 U.S.C. § 523(a)(7); Fed. R. Bankr.

19  P. 4007(a).  Leveraging their second theory, they suggest that the

20  $1,077,218 in attorneys' fees awarded for recovering those civil

21  penalties is also nondischargeable.[1]  Patacsils filed an answer to the

22  complaint and the matter is ready for trial.

23  **II.  PROCEDURE**

24       Recent case law from the Ninth Circuit, *Magadia v. Wal-Mart

25  Associates*, 999 F.3d 668, 674-678 (9th Cir. 20201), has brought

26

27  [1] In some cases, attorneys' fees awarded as damages for a debt not
    dischargeable under 11 U.S.C. § 523(a) are also nondischargeable.  *Cohen v.
    de la Cruz*, 523 U.S. 213, 218 (1998); *In re Zito*, 604 B.R. 388, 392-393 (9th
28  Cir. BAP 2019).

3

guidance to Article III standing in actions prosecuted under the
Private Attorney General Act.  Believing that the plaintiffs may lack
Article III standing to assert the fine, penalty and forfeiture
exception, 11 U.S.C. § 523(a)(7), this court issued an order to show
cause regarding dismissal.  Order to Show Cause, ECF No. 202.  Each
side filed responsive briefs and the court entertained oral argument.

**III.  JURISDICTION**

This court has jurisdiction.  28 U.S.C. §§ 1334(a)-(b), 157(b);
*see also* General Order No. 182 of the Eastern District of California.
Jurisdiction is core.  28 U.S.C. § 157(b)(2)(I); *Carpenters Pension
Trust Fund for Northern Calif. V. Moxley*, 734 F.3d 864, 868 (9th
2013); *In re Kennedy*, 108 F.3d 1015, 1017 (9th Cir. 1997).  Plaintiffs
do not consent to the entry of final orders and judgments by this
court; defendants do so consent.  28 U.S.C. § 157(b)(3); *Wellness
Int'l Network, Ltd. V. Sharif*, 135 S.Ct. 1932, 1945-46 (2015).
Scheduling Order § 2.0, ECF No. 13.

**IV.  LAW**

**A.  Article III Standing**

**1.  Traditional analysis**

Article III standing is jurisdictional.  *CGM, LLC v. BellSouth
Telecomms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011); Fed. R. Civ. P.
12(b)(1), *incorporated by* Fed. R. Bankr. P. 7012.  Plaintiffs seeking
redress in the federal courts must show Article III standing.  *Lujan
v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992).  Standing implicates
the case And controversy provisions of the United states Constitution.
"In essence the question of standing is whether the litigant is
entitled to have the court decide the merits of the dispute or of
particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

> In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. *The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally.* A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action . . ..'

*Id.* (internal citations omitted) (emphasis added).

Federal courts must address the issue of standing whenever and wherever it arises. *United States v. Hays*, 515 U.S. 737, 742 (1995); *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1005 (9th Cir. 2011). It must even do so sua sponte. Fed. R. Civ. P. 12(h)(3), *incorporated by* Fed. R. Bankr. P. 7012. Where the issue arises in a motion to dismiss, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Id.* At 501, citing *Jenkins v. McKeithen*, 395 U.S. 411, 421—422 (1969); *W.R. Huff Asset Management, LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2008). The party asserting federal jurisdiction bears the burden of proof. *Id.* At 561; *Cooksey v. Futtrell*, 721 F.3d 226, 234 (4th Cir. 2013).

Standing does not exist in gross and advances claim by claim and as to each form of relief sought. *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008); *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000). Moreover, that the Cabardo plaintiffs enjoyed Article III standing in District Court does not assure them standing in this court. As the

Supreme Court phrased it:

> The complaining party must also show that he is within the
> class of persons who will be concretely affected. *Nor does
> a plaintiff who has been subject to injurious conduct of
> one kind possess by virtue of that injury the necessary
> stake in litigating conduct of another kind, although
> similar, to which he has not been subject.*

*Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) (emphasis added), citing

*Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166–167 (1972).

The "irreducible constitutional minimum of standing" has three
component parts. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560
(1992). "[T]raditional Article III standing" requires that the
plaintiff has "(1) suffered an injury in fact, (2) that is fairly
traceable to the challenged conduct of the defendant, and (3) that is
likely to be redressed by a favorable judicial decision." *Spokeo,
Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016);
*Lujan* at 560; *Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668 (9th
Cir. 2021) (describing this as traditional Article III standing).
Each element is further particularized. "[I]njury in fact" means "an
invasion of a legally protected interest" that is "concrete and
particularized" and "actual or imminent, not conjectural or
hypothetical." *Spokeo*, 578 U.S. at 339 (2016). "[F]airly traceable"
requires a causal connection between the injury that occurred and the
defendant's conduct. *Lujan*, 504 U.S. at 559-560. "[L]ikely, to be
redressed" means that there is a "substantial likelihood" the relief
sought will redress injury. *Duke Power Co. v. Carolina Env't Study
Grp., Inc.*, 438 U.S. 59, 75 (1978). The relief granted must redress
the plaintiff's, not the undifferentiated general public's injury in
fact. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106
(1998) ("[r]elief that does not remedy the injury suffered cannot

bootstrap a plaintiff into federal court; that is the very essence of
the redressability requirement").

The Article III standing applies to bankruptcy proceedings. *In
re Sherman*, 491 F.3d 948, 956-958 (9th Cir. 2007); *Matter of
Spielbauer,* 785 Fed. Appx. 369, 371 (9th Cir. 2019); *In re Global
Technologies, Inc.*, 645 F.3d 201, 210 (3rd Cir. 2011). Outside the
bankruptcy, the injury in fact must be traceable to an illegal act,
*Miller v. Nissan Motor Acceptance Corp.*, 362 F.3d 209, 221 (3rd Cir.
2004); inside bankruptcy, most courts trace the injury in fact not to
an illegal act, but to the bankruptcy and its effect on the party
before it. *Sherman*, 491 F.3d at 955 (motion to dismiss the petition);
*Spielbaur*, 785 Fed. Appx. at *3 (adversary proceeding under 11 U.S.C.
§ 523(a)(6)).

### 2. Qui tam actions

Qui tam actions are a "well-established exception' to the
*traditional* Article III analysis." *Magadia v. Wal-Mart Associates,
Inc.*, 999 F.3d 668 (9th Cir. 2021), quoting *Spokeo*, 136 S. Ct. at 1552
n.*; *Vt. Agency of Nat. Res. v. U.S. ex. rel. Stevens*, 529 US. 765,
769 n. 1, 774-776 (2000); *Bennett v. Spear*, 520 U.S. 154, 162 (1997)
(citizen-suit provisions of the Clean Air Act does not eliminate
Article III standing). "*Qui tam is short for the Latin phrase qui tam
pro domino rege quam pro se ipso in hac parte sequitur*, which means
'who pursues this action on our Lord the King's behalf as well as his
own.'" *Vermont Agency*, 529 U.S. at 768 n. 1. "A qui tam statute
permits private plaintiffs, known as relators, 'to sue in the
government's name for the violation of a public right.'" *Magadia*, 999
F.3d at 674, quoting, *Spokeo*, 136 S. Ct. at 1552 n.* (Thomas, J.,
concurring). In a qui tam action the government partially assigns its

rights to the relator plaintiff, *U.S. ex. rel. Kelly v. Boeing Co.*, 9
F.3d 743, 748 (9th Cir. 1993), and "it is the government's injury that
confers standing upon the private person." *Stalley v. Methodist
Healthcare*, 517 F.3d 911, 917 (6th Cir. 2008), cited by *Magadia*, 999
F.3d at 674.

### 3.    Private Attorney General Act plaintiffs

The Ninth Circuit has held that the Private Attorney General Act,
Cal. Labor Code § 2698 et seq., is not qui tam action for the purposes
of Article III standing. *Magadia*, 999 F.3d at 674-678 ("PAGA's
features diverge from Vermont Agency's assignment theory of qui tam
injury, and they depart from the traditional criteria of qui tam
statutes").

The full reach of *Magadia* was not apparent until almost a year
later when the Ninth Circuit decided *Saucillo v. Peck*, 25 F.4th 1118
1125 (9th Cir. 2022).  Though *Saucillo* involved a non-PAGA party's
right to appeal an order approving the settlement of a PAGA action, it
made clear that PAGA plaintiffs must show traditional Article III
standing, i.e., injury in fact and redressability, rather than relying
on their status of as qui tam plaintiffs:

> *Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668 (9th
> Cir. 2021)...concluded that the plaintiff—Roderick Magadia—
> lacked Article III standing to bring a "meal-break claim"
> under PAGA "because he did not suffer an injury himself."
> *This conclusion flowed from Magadia's core holding that
> plaintiffs seeking penalties under PAGA for California
> labor law violations must satisfy the traditional Article
> III standing requirement of an injury in fact... Magadia*
> recognized that "PAGA has several features consistent with
> traditional qui tam actions." However, we also explained
> that "PAGA differs in significant respects from traditional
> qui tam statutes," and so ultimately held that PAGA was not
> "qui tam for purposes of Article III" because its features
> "depart from the traditional criteria of qui tam
> statutes[.]"

*Saucillo*, 25 F.4th at 1125 (emphasis added) (internal citations

8

omitted).

That said, circuit law requires that Private Attorney General Act plaintiffs, Cal. Labor Code § 2698 et seq., must satisfy the traditional Article III analysis, i.e., injury in fact and redressability, when demonstrating Article III standing.

**B.   11 U.S.C. § 523(a)(7)**

Most Chapter 7 debtors are entitled to the discharge of all, or almost all, debts incurred prior to the petition date. *In re Zhiry*, No. 21-22759-A-7, 2023 WL 2530252, at *1 (Bankr. E.D. Cal. Mar. 14, 2023). Debts excepted from discharge come in two flavors: exceptions that exist as a matter of law (sometimes referred to as self-executing), e.g., 11 U.S.C. § 523(a)(1), (a)(3), (a)(5), (a)(9)-(19), and exceptions that require creditors to file, in a timely fashion, an adversary proceeding to protect their rights. 11 U.S.C. § 523(a)(2), (a)(4), (a)(6). Section 523(a)(7) governs debts for fines or penalties that are due and payable to the government; it is excepted from discharge as a matter of law. *In re Scheer*, 819 F.3d 1206, 1209 n. 1 (9th Cir. 2016); *Matter of Towers*, 162 F.3d 952, 953 (7th Cir. 1998) ("[d]ebts covered by this subsection thus pass through bankruptcy unaffected; the creditor may disregard the [bankruptcy] proceedings and enforce its rights later"); I*n re Williams*, 438 B.R. 679, 687 (10th Cir. BAP 2010). Debts excepted from discharge as a matter of law, including those described in § 523(a)(7), follow the debtor out the backdoor of the courthouse, even though the creditor has undertaken no action to perfect or enforce its rights.

The rudiments of § 523(a)(7) are well-known:

A discharge under section 727, 1141, 11921 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

...

(7) *to the extent such debt* is for a fine, penalty, or forfeiture *payable to and for the benefit of a governmental unit*, and is not compensation for actual pecuniary loss, other than a tax penalty--

    (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

    (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition.

11 U.S.C. § 523(a)(7) (emphasis added).

Section 523(a)(7) has four elements:

To be nondischargeable, the debt must (1) arise as a punishment or sanction for some type of wrongdoing by the debtor and not merely be an enhanced monetary remedy for what is essentially a breach of contract; (2) not be compensation for actual pecuniary loss; (3) be payable to a governmental unit; and (4) be for the benefit of a governmental unit.

4 *Collier on Bankruptcy*, Exceptions to Discharge ¶ 523.13 (16th ed. 2023).

"Governmental unit" is defined term.

The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

11 U.S.C. § 101(27).

The phrase "payable to and for the benefit of a governmental unit," 11 U.S.C. § 523(a)(7), has bedeviled courts for nearly 40 years. *See e.g. Kelly v. Robinson*, 479 U.S. 36 (1986) (restitution ordered in a criminal proceeding are excepted from discharge); *Matter of Towers*, 162 F.3d 952 955 (1998) (civil penalties payable to the Illinois Attorney General, which distribute them to fraud victims are not excepted from discharge); *Hughes v. Sanders*, 469 F.3d 475 (6th

Cir. 2006) (judgment for legal malpractice and sanctions payable to the client was not excepted from discharge).

When a party is unclear as to whether a particular debt falls within one of enumerated debts excepted from discharge as a matter of law, e.g., 11 U.S.C. § 523(a)(7), the aggrieved party may seek declaratory relief from the bankruptcy court. Fed. R. Bankr. P. 4007(a). There are only two prerequisites to relief under Rule 4007(a); that the party seeking relief: (1) be a debtor or a creditor, *Cundiff v. Cundiff (In re Cundiff)*, 227 B.R. 476 (6th Cir. BAP 1998); *In re Spong*, 661 F.2d 6 (2nd Cir. 1981); 9 *Collier on Bankruptcy*, Chapter 4007 Determination of Dischargeability of Debt ¶ 4007.02 (16th ed. 2023); and (2) subject matter jurisdiction, including standing. *In re Sherman*, 491 F.3d 948, 958 n. 10 (9th Cir. 2007); *In re Mlincek*, 350 B.R. 764 (Bankr. N.D. Ohio 2006); *In re Erikson*, No. 12-59165, 2013 WL 2035875, at *2 (Bankr. E.D. Mich. May 10, 2013). In most instances, a creditor's Article III standing is, in fact, unremarkable.

## C. Private Attorney General Act

Historically, enforcement of the wage and hours law has been the prerogative of the state. *Arias v. Superior Ct.*, 46 Cal.4th 969, 980, 209 P.3d 923, 929 (2009).

That changed in 2003, when the California legislature enacted the Labor Code Private Attorney Generals Act of 2004. Cal. Labor Code § 26988 et seq. As one court explained it:

> The Legislature declared that adequate financing of labor
> law enforcement was necessary to achieve maximum compliance
> with state labor laws, that staffing levels for labor law
> enforcement agencies had declined and were unlikely to keep
> pace with the future growth of the labor market, and that
> it was therefore in the public interest to allow aggrieved
> employees, acting as private attorneys general, to recover

civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts.

*Id.* at 980.

Rather than relying on the state to enforce the wage and hours laws, the Private Attorney General Act allows aggrieved workers to sue a noncompliant employer for violation of the wage and hours laws. The statute is procedural. *Amalgamated Transit Union, Loc. 1756, AFL-CIO v. Superior Ct.*, 46 Cal.4th 993, 1003 (2009). Injured employees who wish to act as Private Attorneys General must comply with Labor Code § 2699(a). They start by giving written notice of the violation of both the employer and the Labor and Workforce Development Agency; the notice must describe both "the facts and theories supporting the violation." Cal. Labor Code § 2699.3(a)(1). If the agency investigates the employees claim and issues a citation to the employer, "the employee may not commence" a civil action under the Private Attorney General Act. Cal. Labor Code § 2699.3(b)(2)(A)(i). If the agency expressly declines to investigate or investigates but does not issue a citation, generally within 65 days of the notice, the employees may commence a civil action against the employer for penalties. Cal. Labor Code § 2699.3(a)(2)(B). If the State of California declines to issue a citation to the employer, it may have no right to intervene in the Private Attorney General Act action. *Iskanian v. CLS Transp. Los Angeles*, LLC, 59 Cal.4th 348, 389-390 (2014); *Magadia v. Wal-Mart Associates*, 999 F.3d 668 (9th 2021); *contra Viking River Cruises, Inc. v. Moriana*, 142 S.Ct. 1906, 1914 n. 2 (2022).

Aside from any wages due by virtue of the violations, the employee may bring an action on behalf of himself and other employees

to recover the "civil penalties" otherwise due the State of

California:

> Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through *a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees* pursuant to the procedures specified in Section 2699.3.

Cal. Labor Code § 2699(a).

Likewise, California Labor Codes 2699(g)(1) provides that such an

aggrieved employee may recover the civil penalties and, if the

employee prevails, the attorneys' fees expended in proving entitlement

to those penalties.

> Except as provided in paragraph (2), *an aggrieved employee may recover the civil penalty described in subdivision (f) in a civil action pursuant to the procedures specified in Section 2699.3 filed on behalf of himself or herself and other current or former employees against whom one or more of the alleged violations was committed. Any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs...*,

Cal. Labor Code § 2699(g)(1) (emphasis added).

If civil penalties are recovered, they are--as the Cabardo

plaintiffs phrase it--"split," Opp'n 7:20, 8:11, ECF No. 213--between

the Labor and Workforce Development Agency and the aggrieved

employees:

> Except as provided in subdivision (j), *civil penalties recovered by aggrieved employees shall be distributed as follows: 75 percent to the Labor and Workforce Development Agency* for enforcement of labor laws, including the administration of this part, and for education of employers and employees about their rights and responsibilities under this code, to be continuously appropriated to supplement and not supplant the funding to the agency for those purposes; and *25 percent to the aggrieved employees*.

Cal. Labor Code § 2699(i) (emphasis added).

13

## V.   DISCUSSION

The question is: whether the Cabardo plaintiffs, acting as Private Attorneys General, Cal. Labor Code §§ 2698 et seq., have Article III standing to except the District Court judgment for civil penalties, $79,524 or some portion thereof, under § 523(a)(7).  The Ninth Circuit has not yet ruled on this question.  *Cf. In re Schimmels*, 127 F.3d 875, 880-882 (9th Cir. 1997) (False Claims Act and § 523(a)(7), not reaching the merits);[2] *Porter v. Nabors Drilling USA LP*, 854 F.3d 1057, 1062-1063 (9th Cir. 2017) (Private Attorney General Act plaintiffs are not acting as "an agent of the government" for the purposes of 11 U.S.C. § 362(b)(4) (exceptions to the stay)).

Moreover, the award of attorneys' fees made ancillary to the civil penalties do not provide a basis for standing.

> [A]n interest that is merely a "byproduct" of the suit itself cannot give rise to a cognizable injury in fact for Article III standing purposes. *See Steel Co.*, 523 U.S., at 107, 118 S.Ct. 1003 ("[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit"); *see also Diamond v. Charles*, 476 U.S. 54, 69-71, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986) (holding that assessment of attorney's fees against a party does not confer standing to pursue the action on appeal).

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000).

### A.    Direct Standing Under § 523(a)(7)

The grant of authority to act on behalf of the government does not confer Article III standing.  *Hollingsworth v. Perry*, 570 U.S. 693, 710 (2013); *Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668,

---

[2] *In re Schmimmels* is distinguishable from the present action because the False Claims Act is, in fact, a qui tam action for the purposes of standing. *U.S. ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 748 (9th Cir. 1993); *compare Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668, 674-678 (9th Cir. 2021) (Private Attorney General Act, Cal. Labor Code § 2698 et seq., is not a qui tam action for the purposes of Article III standing purposes).

674.[3]  States "have no power directly to enlarge or contract federal jurisdiction." *Fiedler v. Clark*, 714 F.2d 77, 80 (9th Cir. 1983). "[S]tanding in federal court is a question of federal law, not state law." *Hollingsworth*, 570 U.S. at 715.

The Cabardo plaintiffs have not suffered a direct injury with respect to § 523(a)(7).  It is that statute that defines the scope of the injury to be redressed.  As the Supreme Court stated:

> Although *standing* in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, e.g., *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968), it *often turns on the nature and source of the claim asserted. The actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . ..' See Linda R.S. v. Richard D., supra*, 410 U.S., at 617 n. 3, 93 S.Ct., at 1148; *Sierra Club v. Morton*, 405 U.S. 727, 732, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636 (1972).

*Warth v. Seldin*, 422 U.S. 490, 500 (1975) (emphasis added).

### 1.    Economic injuries

To be sure, an economic injury would suffice for Article III standing.  But no such injury exits here.  As to the penalties, the real party in interest is the State of California or, more properly, it's labor law enforcement agencies. *Viking River Cruises, Inv. V. Moriana*, 142 S.Ct. 1906, 1914 (2022); *Magadia* at 677; *Sakkab v.*

---

[3] This result is precisely the opposite of that in the District Court action. Both the District Court action to liquidate the debt and this action to except the debt, 11 U.S.C. § 523(a)(7), are both governed by *Magadia* and its requirement that the plaintiffs suffer an injury in fact, apart from the Cabardo plaintiffs' standing as relators.  In the District Court, the plaintiffs suffered injury and enjoyed a share of the economic pie.  Cal. Labor Code § 2699(i) (relators received 25% of the civil penalties).  Here, as a matter of law, the only beneficiary of an action under § 523(a)(7) to except the debt from discharge is the State of California. *Matter of Towers*, 162 F.3d 952 (7th Cir. 1998).  Any injury the Cabardo plaintiffs suffered as lost wages is not included within the scope of § 523(a)(7), which applies to penalties, and not compensatory damages.  Consequently, *Magadia* dictates precisely the opposite finding as to Article III standing in discharge exception litigation under § 523(a)(7).

*Luxottica Retail North America*, Inc., 803 F.3d 425 (9th Cir. 2015)

(the state labor enforcing agencies are the real parties in interest);

*Iskanian v. CLS Transportation Los Angeles*, LLC, 59 Cal. 4th 348, 381

(2014), abrogated by *Viking River Cruises, Inc. v. Moriana*, 213 L. Ed.

2d 179, 142 S. Ct. 1906 (2022) ("[t]he civil penalties recovered on

behalf of the state under the [Private Attorney General Act] are

distinct from the statutory damages to which employees may be entitled

in their individual capacities").  By statute, the state retains 75%

of the penalty and the aggrieved employees retain 25%.  Cal. Labor

Code § 2699(i); *Magadia*, 999 F.3d at 674-678; *Saucillo*, 25 F.4th at

1125.

At first blush, the 25% of the civil penalty due employees looks

like an economic interest that would support Article III standing in

an action under § 523(a)(7).  But that thinking fails upon analysis.

Section 523(a)(7) ever only applies to penalties paid to and retained

by a governmental unit.  11 U.S.C. § 523(a)(7) ("[a] discharge under

section 727...does not discharge an individual from any debt--...to

the extent that such debt is for a fine, penalty, or forfeiture

payable to and for the benefit of a governmental unit").  In a Private

Attorney General action, the State of California is the real party in

interest and, acting under the enabling statute, Cal. Labor Code §

2699(i)," and, after the fact, the State of California divides those

penalties with the employees who have acted to collect them.

That the plaintiff's interest in those funds, i.e., 25% of the

civil penalty, is not protected by § 523(a)(7) has been resolved

definitively.  *Matter of Towers*, 162 F.3d 952 (7th Cir. 1998).  In

*Towers*, the court considered civil fraud restitution in the amount of

$210,000 paid "to the Attorney General of Illinois, but for the

benefit of the victims of the [debtor's] fraud." *Id.* at 955. The Seventh Circuit held that the civil restitution under the Illinois consumer protection laws was "payable to, but not for the benefit of, the Attorney General of Illinois" and was therefore dischargeable. Finding the benefit to the State of Illinois insufficient, the court stated:

> Perhaps one could reply that the state's benefit need not be pecuniary. Deterrence of fraud is a benefit to all of the state's citizens... But the context in which "benefit" appears—"payable to and for the benefit of a governmental unit"—implies that the "benefit" in question is the benefit of the money that is "payable to" the governmental unit.

*Id.* at 956.

Having determined that it is only the 75% of the penalty payable to the State of California, and not the 25% reimbursed by the State of California to aggrieved employees, that is protected by § 523(a)(7), it is a short step to concluding that the 25% of the penalty does not support Article III standing. "An interest unrelated to injury in fact is insufficient to give a plaintiff standing. *The interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right.*" *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 772 (2000).

Moreover, since the Cabardo plaintiffs have no economic interest in the civil penalties that might be excepted from discharge, the 75% of the penalty payable to the State of California does not give the Cabardo plaintiffs standing under § 523(a)(7). *Magadia* at 674-678 (plaintiff who did not suffer "meal-break violations" himself lacked Article III standing). That said, the Cabardo plaintiffs may not rely on an economic interest in the civil penalties to find Article III standing.

### 2. Nonpecuniary injuries

Certainly, non-economic injuries harm will suffice for Article III standing. *Griswold v. State of Conn.*, 381 U.S. 479, 484-485 (1965) (invasion of privacy); *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1396 (9th Cir. 1992) (emotional distress); *School Dist. of Abington Township, Penn. v. Schempp*, 374 U.S. 203, 224 fn. 9 (1963) (free exercise of religion). But they do not do so here.

While civil penalties do have a deterrent effect on employers who violate the wage and hours laws, in most cases, that is insufficient to create standing. Private Attorney General Act plaintiffs seeking to except debts from discharge under § 523(a)(7) are closely akin to the standing issues that arise in citizen-suits. A "citizen suit" is "[a]An action under a statute giving citizens the right to sue violators of the law (esp. environmental law) and to seek injunctive relief and penalties." *Black's Law Dictionary* (11th ed. 2019). The Supreme Court has consistently held that in the absence of a continuing violation, a citizen-suit plaintiff may not establish Article III standing (injury in fact) by virtue of a civil penalty imposed against the defendant. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC)*, Inc., 528 U.S. 167, 185-187 (2000) (Clean Water Act) ("private plaintiffs, unlike the Federal Government, may not sue to assess penalties for wholly past violations"); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998)(Emergency Planning and Community Right-To-Know Act of 1986); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 59, (1987) (Clean Water Act) ("the harm sought to be addressed by the citizen suit lies in the present or the future, not in the past"). The citizen-suit comparison is particularly compelling. Like §

523(a)(7), both Clean Water Act and the Emergency Planning and Right-to-Know Act of 1986 provide for penalties paid solely to the government.  See 33 U.S.C. § 1365(a) (Clean Water Act); 42 U.S.C. § 11045-11046 (Emergency Planning and Right to Know Act).  While the District Court judgment awarded civil penalties, which will ultimately be divided, 75% to the State of California and 25% to the aggrieved employees, it is only the portion of the civil penalty payable to the government itself that is excepted from discharge.  *Matter of Towers*, 162 F.3d 952 (7th Cir. 1998).  As a result, the citizen-suit Article III standing cases suggest that Private Attorney General Act plaintiffs, Cal. Labor Code § 2698 et seq., lack standing to assert the discharge exception in 523(a)(7) based on a similar penalty.  Moreover, the Cabardo plaintiffs admit that the Patacsils ceased operations and, therefore, there is no continuing wage and hours violation.  Compl. at ¶ 33.  From this, the court concludes that the award of civil penalties is insufficient to find Article III standing.

**B.   Representational Standing**

The Cabardo plaintiffs contend that they speak as representatives of the State of California, the Labor and Workforce Development Agency and, therefore, have standing to determine whether the $79,524 in civil penalties awarded is non-dischargeable under § 523(a)(7).  Opp'n 2:21-22 ("on behalf of the State"), 6:19, 7:6, ECF No. 213.

Whether Private Attorney General Act plaintiffs are characterized as "agents" or "complete assignees" is disputed.  *Viking River Cruises, Inc. v. Moriana*, 142 S.Ct. 1906, 1914 n. 2 (2022).

The Supreme Court and circuit courts have ruled on a closely related area: whether an assignee has Article III standing by virtue of an assignment of rights.  *Sprint Communications Co., L.P. v. APCC*

19

*Services, Inc.*, 554 U.S. 269, 285 (2008) (assignee for the purposes of collection who received "all rights, title and interest" for purposes of collection); *In re Boyajian*, 564 F.3d 1088, 1089, 1091 (9th Cir. 2009) (assignment of "its right, title and interest" sufficient for statutory standing); *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 117 (2d Cir.2002) ("[A] valid and binding assignment of a claim (or a portion thereof)—not only the right or ability to bring suit—may confer standing on the assignee").

Post-*Sprint Communications*, the Second Circuit Court of Appeals decided *W.R. Huff Asset Management, LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2008), cited by the Ninth Circuit with approval in *Northstar Financial Advisors, Inc. v. Schwab Investments*, 779 F.3d 1036 (9th Cir. 2015).  In *W.R. Huff Asset Management*, the plaintiff was an investment advisor for institutional investors.  As an investment advisor, it acted as the investors' attorney-in-fact for the purposes purchasing securities and, if necessary, litigating disputes.  In fact, the plaintiff did not have an ownership interest in the stocks purchased for its clients. The plaintiff advised some of its clients to purchase debt securities from Adelphia Communications Corporation.  When it became known that Adelphia Communications had committed widespread securities fraud and W.R. Huff's clients suffered financial losses, W.R. Huff sued Adelphia Communications on behalf of its investors.  The defendants moved to dismiss for lack of standing and the District Court denied the motion.  The Second Circuit of Appeals reversed and remanded.  Applying the teachings of *Sprint Communications*, the Second Circuit held that an assignee may not show Article III standing as an assignee unless the assignee has "legal title to, or a proprietary interest in, the claim."  p. 108.

Addressing whether plaintiff W.R. Huff, acting on behalf of his clients, had Article III standing, the court stated:

> *Huff has not alleged in its complaint that it suffered any injury*; rather, the alleged injury was suffered by Huff's clients. Therefore, *the dispositive question is whether Huff, as the named plaintiff, can demonstrate an "injury-in-fact" through some other means, such as an assignment of claims.* Courts may permit a party with standing to assign its claims to a third party, who will stand in the place of the injured party and satisfy the constitutional requirement of an "injury-in-fact."

*Id.* at 107 (emphasis added), citing *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000).

The court continued and articulated *Sprint Communications'* standards for Article III standing.

> In our view, *Sprint* makes clear that *the minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim.* Id. at 2543-44 ("There is an important distinction between simply hiring a lawyer and assigning a claim to a lawyer (on the lawyer's promise to remit litigation proceeds). The latter confers a property right (which creditors might attach); the former does not.")

Id. at 108 (emphasis added).

Simply put, *W.R. Huff's* teaches us that the minimum requirement for standing by a third party, e.g., agent or attorney-in-fact, is "legal title to, or proprietary interest in, the claim."

As applied to the Cabardo plaintiffs, *W.R. Huff* precludes a finding of Article III standing as to a § 523(a)(7) cause of action. The problem is that Private Attorney General Act plaintiffs do not enjoy legal title to, or a proprietary interest in, the civil penalties.[4]  The weight of the authority treats these plaintiffs as an

---

[4] In *Sprint Communications*, the Supreme Court acknowledged that if the assignment conveyed less than all the assignors' rights that the purported assignees would lack Article III standing. "Petitioners argue, for example, that the aggregators have not themselves suffered any injury in fact and that the assignments for collection "do not suffice to transfer the payphone operators' injuries." It is, of course, true that the aggregators did not

"agent" or a "proxy" for the state. *Viking River Cruises, Inv. V. Moriana,* 142 S.Ct. 1906, 1914 n. 2 (2022) ("[t]he extent to which PAGA plaintiffs truly act as agents of the State rather than complete assignees is disputed"); *Sakkab v. Luxottica Retain N. Am. Inc.*, 803 F.3d 425, 435 (9th Cir. 2015); *Saucillo v. Peck*, 25 F.4th 1118, 1125-1129 (9th Cir. 2022); *Edward Borelli et al. v. Black Diamond Aggregates, Inc.*, 2022 WL 2079375 *8 (E.D. Cal. 2022); *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal4th 348, 382 (2014); *Amalgamated Transit Union, Loc. 1756, AFL-CIO v. Superior Ct.*, 46 Cal. 4th 993, 1003 (2009); *contra Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668, 677 (9th Cir. 2021) (the Private Attorney General Act "represents a permanent, full assignment of California's interest to the aggrieved employee").[5] The State of California is always the real party in interest. *Iskanian*, 59 Cal4th at 382; *Viking River Cruises Inv.*, 142 S.Ct. at 1914. Critically, the aggrieved employee has neither title, nor ownership of the penalties.

> A cause of action is transferable, that is, assignable, by its owner if it arises out of a legal obligation or a violation of a property right. (Civ.Code, § 954.) *The Labor Code Private Attorneys General Act of 2004 does not create property rights or any other substantive rights. Nor does it impose any legal obligations. It is simply a procedural statute* allowing an aggrieved employee to recover civil penalties—for Labor Code violations—that otherwise would be

---

originally suffer any injury caused by the long-distance carriers; the payphone operators did. But the payphone operators assigned their claims to the aggregators lock, stock, and barrel." *Sprint Communications*, 554 U.S. at 286.

[5] *Magadia's* suggestion that the Private Attorney General Act as a "permanent, full assignment of California's interest to the aggrieved employee" has been largely rejected. *Viking River Cruises Inv.*, 142 S.Ct. at 1914 n. 2. Moreover, suggesting that *Magadia* be construed as a full assignment within the meaning of *W.R. Huff* would run afoul of long-standing California precedent, which prohibits the assignment of statutory penalties. *Esposti v. Rivers Brothers, Inc.*, 207 Cal. 570, 573 (1929); *Peterson v. Ball*, 211 Cal. 461, 468-470 (1931); *Western Mortgage etc. Co. v. Gray*, 215 Cal. 191, 198 (1932); *Amalgamated Transit Union, Loc. 1756, AFL-CIO v. Superior Ct.*, 46 Cal. 4th 993, 1003 (2009).

sought by state labor law enforcement agencies.
*Amalgamated Transit Union*, 46 Cal. 4th 993, 1003 at (2009) (emphasis added). Under this characterization, the Cabardo plaintiffs do not meet the *W.R. Huff* "legal title or proprietary interest" rule.

### C.    Judgment Creditor Standing

Generally, uncertainty as to whether a pre-petition judgment (or here, more properly a part of it) is affected—"discharged" in bankruptcy vernacular, is a sufficient injury in fact for Article III purposes.  *In re Sherman*, 491 F.3d 948, 965 (9th Cir. 2007) (that the bankruptcy "might" discharge the creditor's debt was a sufficient basis for Article III standing); *Matter of Spielbauer*, 785 F. App'x 369, 371 (9th Cir. 2019) (state court judgment); *Cf. In re Hawker Beechcraft, Inc.*, 515 B.R. 416, 433 (S.D.N.Y. 2014) (relators seeking to except an unliquidated debt from discharge, 11 U.S.C. § 1141(d)(6), had Article III standing).

Here, there is no doubt that the Cabardo plaintiffs are prepetition judgment creditors.  *Lawrence T. Lasagna, Inc. v. Foster*, 609 F.2d 392, 395 (9th Cir. 1979); *In re Jacks*, 266 B.R. 728, 736 (9th Cir. BAP 2001); 11 U.S.C. §§ 101(5) (claim), 101(10) (creditor).

The question is whether some of that judgment has been forgiven. That judgment is comprised of unpaid wages due the Cabardo plaintiffs and civil penalties due the State of California.  Insofar as the civil penalties within the judgment are concerned, the plaintiffs act as agents for the State of California.  In the absence of a declaration by this court as to the dischargeability of the civil penalties (and attorneys' fees arising from that award), the Cabardo plaintiffs' ability to enforce their judgment will be impaired.  They will be uncertain whether they may collect all of the judgment (if the civil

penalties are deemed accepted by § 523(a)(7)) or only the remainder of the judgment, i.e., unpaid wages (if those are ultimately deemed excepted from discharge, 11 U.S.C. § 523(a)(6)). *Magadia* does not suggest otherwise. That uncertainty is a sufficient injury in fact, traceable to the bankruptcy, and that will likely be redressed for Article III standing.

**VI.   CONCLUSION**

Ordinarily, injury in fact—and by extension Article III standing—in discharge exception adversary proceedings is obvious. Here, not so much. In this action, the injury in fact, i.e., uncertainty as to the application of the discharge to civil penalties that will be paid to the State of California, falls just inside the third base line; the question is in fair territory. Prior to bankruptcy, acting under the Private Attorney Generals Act, the plaintiffs obtained a judgment against the defendants for unpaid wages and civil penalties. But for the plaintiffs' need to know the extent to which their judgement remains enforceable, i.e., only the unpaid wage portion (and not the civil penalties) or the entire amount, Article III standing would not exist. The order to show cause will be discharged; the court will issue an order from chambers.

**Dated:** April 25, 2023

_Fredrick E. Clement_
**Fredrick E. Clement**
**United States Bankruptcy Judge**

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked ____, via the U.S. mail.

| Attorneys for the Plaintiff(s) | Attorneys for the Defendant(s) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | **Office of the U.S. Trustee**<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA  95814 |