**POSTED TO THE WEBSITE**

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

In re:

ERNESTO PATACSIL and MARILYN EMBRY
PATACSIL,

          Debtors.

Case No. 20-23457-A-7

JOSEPH CABARDO et al.,

          Plaintiffs,

     v.

ERNESTO PATACSIL et al.,

          Defendants.

Adv. No. 20-02167-A

FEC-1

**Memorandum Regarding Preclusive Effect, ECF Nos. 106, 117**

This case is about square pegs and round holes.  Acting as private attorneys general, eight former employees sued their employer for wage and hours violations; they obtained judgment for unpaid wages, penalties, and attorneys' fees.  After the defendants filed bankruptcy, the injured employees filed this adversary proceeding to except their judgment from discharge.  11 U.S.C. § 523(a)(6) (willful and malicious injuries), (a)(7) (penalties due the government).  Have the plaintiffs pounded their judgment into § 523?

**I.     FACTS**

Ernesto Patacsil and Marilyn Embry Patacsil ("Patacsils") did business as Patacsils' Care Homes.  Patacsils' Care Homes operated seven residential care facilities for mildly impaired developmentally disabled persons.  To assist them, the Patacsils employed the plaintiffs and others to act as caregivers for their residents.  The Patacsils did not pay their employees in an amount or manner consistent with California's wage and hours laws.

Aggrieved by the Patacsils' treatment and after giving notice to the California Labor and Workforce Development Agency, eight employees and/or former employees ("the Cabardo plaintiffs") sued the Patacsils in District Court acting under the Private Attorney General Act, Cal. Labor Code § 2698 et seq. (hereinafter also referred to as "PAGA"), to collect damages for wages and hours violations.  They also sought Labor Code penalties for the Patacsils' violations of the labor laws. The employees were represented by the law firm of Mallison & Martinez and by John R. Grele ("Grele").  After trial, the District Court awarded the Cabardo plaintiffs damages of $893,815, penalties of $79,524 and attorneys' fees of $1,077,218.  Compl. ¶ 8, ECF No. 1.

Sometime later, the Patacsils ceased doing business.  *Id.* at ¶

33.

Predictably, the Patacsils filed a Chapter 7 bankruptcy.

In response, the eight employees, Mallison & Martinez, and Grele filed an adversary proceeding to protect their judgment from discharge. They advanced two theories for excepting their debt. First, the Cabardo plaintiffs seek to perfect their rights in the judgment, which they contend arose from a willful and malicious injury.  11 U.S.C. § 523(a)(6), (c)(1).  Second, the Cabardo plaintiffs and their counsel seek to determine the dischargeability of the civil penalties, i.e., $79,524, as a debt "payable and for the benefit of a governmental unit." 11 U.S.C. § 523(a)(7); Fed. R. Bankr. P. 4007(a).  Leveraging their second theory, they suggest that the $1,077,218 in attorneys' fees awarded for recovering those civil penalties is also nondischargeable.[1]  The defendants Patacsil filed an answer to the complaint and the matter is ready for trial.

**II.   PROCEDURE**

By motions in limine, the plaintiffs move to give preclusive effect to the District Court's findings and to bar defendants from presenting evidence to the contrary.  Mot. in Limine 3:10-16, ECF No. 106; Mot. to Give Preclusive Effect, ECF No. 117.  The motions in limine are unsupported by evidence but refer to the judgment, eight special verdict forms, and the findings of fact.  Mot. in Limine 2:3-7, ECF No. 117; Mot. in Limine 3:2-10, ECF No. 106 ("The findings from the jury and the District Court should be given preclusive effect...").  Trial of this adversary proceeding has not yet commenced

---

[1] In some cases, attorneys' fees awarded as damages for a debt not dischargeable under 11 U.S.C. § 523(a) are also nondischargeable.  *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998); *In re Zito*, 604 B.R. 388, 392-393 (9th Cir. BAP 2019).

and evidence has been lodged, but not yet admitted into evidence.
The court has taken limited judicial notice of the findings made in
the District Court action, Mem., ECF No. 178. The court took judicial
notice of the following facts:

   1.   the existence of a judgment in favor of plaintiffs and against defendants, as well as its contents, in *Cabardo v. Patacsil*, No. 2:212-cv-01705 (E.D. Cal. 2012), Ex. B;[2]

   2.   the existence of an order awarding plaintiffs' attorneys' fees against *Cabardo v. Patacsil*, No. 2:212-cv-01705 (E.D. Cal. 2012), in the amount of $1,077,218.62, Ex. C;

   3.   the existence of eight verdict forms in in *Cabardo v. Patacsil*, No. 2:12-cv-01705 (E.D. Cal. 2012), Ex. K-R, as well as the ancillary facts that: (A) plaintiffs and defendants previously litigated to conclusion the question of defendants' violation of wage and overtime laws; and (B) plaintiffs prevailed in that action; and

   4.   the existence of Findings of Fact and Conclusions of Law in in *Cabardo v. Patacsil*, No. 2:212-cv-01705 (E.D. Cal. 2012).

Order, ECF No. 177.

     All other requests for judicial notice were denied. *Id.*

     The defendants Patacsil have filed opposition to these motions. Opp'n., ECF No. 139.

**III. JURISDICTION**

     This court has jurisdiction. 28 U.S.C. §§ 1334(a)-(b), 157(b); *see also* General Order No. 182 of the Eastern District of California. Jurisdiction is core. 28 U.S.C. § 157(b)(2)(I); *Carpenters Pension Trust Fund for Northern Calif. v. Moxley*, 734 F.3d 864, 868 (9th 2013); *In re Kennedy*, 108 F.3d 1015, 1017 (9th Cir. 1997). Plaintiffs do not consent to the entry of final orders and judgments by this

___

[2] The exhibits refer to trial exhibits which have been lodged with the court and to which no objection has been made notwithstanding the pretrial order requiring parties to do so. Am. Pretrial Order §§ 1.0, 8.0, ECF No. 95.

court; defendants do so consent.  28 U.S.C. § 157(b)(3); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932, 1945-46 (2015).  Scheduling Order § 2.0, ECF No. 13.

**IV.  LAW**

    **A.  Motions in Limine**

A motion in limine is a request for guidance on an evidentiary issue.  *Hays v. Clark County*, 2008 WL 2372295 * 7 (Nev. 2008).  Among the issues that may be raised is res judicata.  *Id.; Hamilton v. Wilmms*, 2016 WL 1436407 (E.D. Cal. 2016).

As one court summarized the law applicable to motions in limine:

> A motion in limine is a request for the court's guidance concerning an evidentiary question. Judges have broad discretion when ruling on motions in limine. However, a motion in limine should not be used to resolve factual disputes or weigh evidence. To exclude evidence on a motion in limine the evidence must be inadmissible on all potential grounds. Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.

*Hays*, 2008 WL 2372295 at 7.  (internal citations and quotation marks omitted).

    **B.  Issue Preclusion**

Issue preclusion applies to actions to except a debt from discharge under 11 U.S.C. § 523.  *In re Comer*, 723 F.2d 737, 740 (9th Cir. 1984).  Whether issue preclusion is available is a question of law.  *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 697 (9th Cir. 1984).  Because the underlying judgment was rendered in federal court, federal common law provides the contours of issue preclusion.  *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008).  The party asserting its applicability has the burden of proving each of its elements.  *Id.* at 907; *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848,

855 (9th Cir. 2016). "Reasonable doubts about what was decided in a

prior judgment are resolved against applying issue preclusion." *In re

Frye*, No. ADV.LA 07-01150-BB, 2008 WL 8444822, at *4 (B.A.P. 9th Cir.

Aug. 19, 2008), citing *Lopez v. Emergency Serv. Restoration, Inc. (In

re Lopez)*, 367 B.R. 99, 107-08 (9th Cir. BAP 2007).

The elements of federal issue preclusion are well-known:

(1) the issue at stake was identical in both proceedings;
(2) the issue was actually litigated and decided in the
prior proceedings; (3) there was a full and fair
opportunity to litigate the issue; and (4) the issue was
necessary to decide the merits.

*Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019), citing

*Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012), as amended (May

3, 2012); *see also Howard v. City of Coos Bay*, 871 F.3d 1032, 1041

(9th Cir. 2017).

The first element, identity of issues, is also well-known:

Typically, we apply four factors (known as the Restatement
factors) to evaluate the question:

(1) is there a substantial overlap between the evidence or
argument to be advanced in the second proceeding and that
advanced in the first?

(2) does the new evidence or argument involve the
application of the same rule of law as that involved in the
prior proceeding?

(3) could pretrial preparation and discovery related to the
matter presented in the first action reasonably be expected
to have embraced the matter sought to be presented in the
second?

(4) how closely related are the claims involved in the two
proceedings?

*Resolution Tr. Corp. v. Keating*, 186 F.3d 1110, 1116 (9th Cir. 1999)

quoting *Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir.

1995)); see also *Restatement (Second) of Judgments* § 27 cmt. c (Am.

Law Inst. 1982).

The second element, actually litigated, is also supported by ample case law. "[A]n issue is actually litigated when an issue is raised, contested, and submitted for determination." *Janjua v. Neufeld,* 933 F.3d 1061, 1066 (9th Cir. 2019), citing Restatement (Second) of Judgments § 27, cmt. (d) (1982) ("When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination and is determined, the issue is actually litigated ....").

The third element, a full and fair opportunity, calls for pragmatics.

> In determining whether a party had a "full and fair opportunity to litigate," courts in the Ninth Circuit are instructed to make a "practical judgment" based on at least two considerations. First, if the procedures used in the first and second actions vary enough to raise the potential for a different result, issue preclusion is inappropriate. Second, if the party's motivation differed in the two actions, whereby an issue in the first action did not need to be contested as significant, issue preclusion should not prevent the litigation of that issue in a subsequent action.

*In re Yu*, 545 B.R. 633, 639 (Bankr. C.D. Cal. 2016), aff'd sub nom. *In re Chunchai Yu*, No. 6:15-AP-01153-SC, 2016 WL 4261655 (B.A.P. 9th Cir. Aug. 11, 2016), aff'd, 694 F. App'x 542 (9th Cir. 2017) (internal citation omitted).

Finally, the issue must be necessary to an on-the-merits decision. "[N]ecessarily'... means only that the court undeniably decided the issue, not that it was unavoidable for it to do so." *MedImpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*, No. 19CV1865-GPC(DEB), 2022 WL 2292982, at *4 (S.D. Cal. June 24, 2022), citing *United States v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001).

Even where issue preclusion is available, the trial court retains discretion with respect to whether it should be applied. *United*

*States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 697 (9th Cir. 1984); *Baldwin v. Kilpatrick (In re Baldwin)*, 249 F.3d 912, 919-920 (9th Cir. 2001); Rest. (Second) Judgments § 28(2).

**V.  DISCUSSION**

**A.  Debt**

"The existence of an enforceable debt is the sine qua non to an action to except debt from discharge, 11 U.S.C. § 523(a). 11 U.S.C. § 523(a) ("A discharge ... does discharge an individual from any debt"); 11 U.S.C. § 101(5)(claim), (12)(debt); *In re Dobos*, 303 B.R. 31, 39 (9th Cir. BAP 2019). [State law determines whether a "debt," 11 U.S.C. § 523(a), exists. *Northbay Wellness Group, Inc. v. Beyries*, 789 F.3d 956, 959 n. 3 (9th Cir. 2015)." *In re Schmidt*, No. 20-25614-A-7, 2023 WL 488988, at *1 (Bankr. E.D. Cal. Jan. 24, 2023).

Issue preclusion applies to the judgment rendered in the District Court action and bars the defendants from re-litigating the existence, as well as the amount, of the debt owed by the defendants to the plaintiffs.  The issue at stake was identical, i.e., violation of California Labor Law.  The dispute was tried by jury, who gave a special verdict.  The District Court reduced those to findings of fact and entered judgment.  At oral argument, the defendants conceded the applicability of collateral estoppel to the debt.  Order, ECF No. 177; 11 U.S.C. § 101(5), (10), (12).  For these reasons, issue preclusion applies and establishes the existence, as well as the amount, of debt owed by the defendants to the plaintiff employees and their counsel.

**B.  Section 523(a)(6)**

Section 523(a)(6) excepts from discharge debt for "willful and malicious injury." 11 U.S.C. § 523(a)(6).  Willful has a particular meaning:

8

"Willful injury": "Willful" within the meaning of §
523(a)(6) means "deliberate or intentional." [*Kawaauhau v.
Geiger* (1998) 523 US 57, 61, 118 S.Ct. 974, 977, fn. 3].

The "willful injury" requirement is met when the creditor
shows that: [1] the debtor had a subjective motive to
inflict the injury; or [2] the debtor believed the injury
was substantially certain to occur as a result of his or
her conduct. [*In re Hamilton* (9th Cir. BAP 2018) 584 BR
310, 319, citing *In re Jercich* (9th Cir. 2001) 238 F3d
1202, 1208; see also *In re Su*, supra, 290 F3d at 1144].

Subjective standard: Section 523(a)(6) nondischargeability
is limited "to those situations in which the debtor
possesses subjective intent to cause harm or knowledge that
harm is substantially certain to result from his actions."
[*In re Su*, supra, 290 F3d at 1145, fn. 3 (emphasis added);
*In re Black* (9th Cir. BAP 2013) 487 BR 202, 211].

March, Ahart & Shapiro, *California Practice Guide*: Bankruptcy § 22:670
(Rutter Group December 2022).

Malicious also has a particular meaning:

"Malicious injury": A "malicious injury" under § 523(a)(6)
involves: [1] a wrongful act; [2] done intentionally; [3]
that necessarily causes injury; and [4] that is committed
without just cause or excuse. [*In re Jercich*, supra, 238
F3d at 1209; *In re Thiara* (9th Cir. BAP 2002) 285 BR 420,
427; *In re Qari* (BC ND CA 2006) 357 BR 793, 798].

*Id.* at § 22:680.

Assuming the facts most favorable to the plaintiffs, i.e., that

the award of statutory penalties required a finding of intent, Order ¶

1, ECF No. 177 (judicial notice of contents of the judgment), issue

preclusion does not resolve the plaintiffs' effort to except the debt

from discharge as willful and malicious. 11 U.S.C. 523(a)(6).   The

problem is that § 523(a)(6) imposes a higher intent hurdle than the

California Labor Code.  The state statutes that create liability for

an employer do not require a finding of intent.  See Cal. Labor Code

§§ 1194, 1194.2, 1197(a) (failure to pay minimum wages), 510, 1194

(failure to pay overtime wages), 226.7, 512 (failure to provide meal

periods), 226.7 (failure to provide rest periods), 226, 226.6 (failure

to provide itemized wage statements), 201-203 (failure to pay all wages on discharge).

Some of California's statutory penalties arising from the failure to pay overtime and/or rest periods do require a showing of intent and the District Court did impose penalties under those provisions. Cal. Labor Code § 1197.1 (intentionally), § 210 (subsequent violation or willful or intentional violations), § 558 (no intent) § 226.3 (no intent). But the level of intent required for the imposition of statutory penalties is less than those described in § 523(a)(6). Of those provisions, Labor Code § 210 offers the strongest support for a finding of willfulness by the defendants.

> (a) In addition to, and entirely independent and apart from, any other penalty provided in this article, every person who fails to pay the wages of each employee as provided in Sections 201.3, 204, 204b, 204.1, 204.2, 204.11, 205, 205.5, and 1197.5, shall be subject to a penalty as follows:
>
> (1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee.
>
> (2) *For each subsequent violation, or any willful or intentional violation*, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

Cal. Labor Code § 210 (emphasis added).

But the word "willful," as used in the Labor Code, means "knowing."

> *The term "wilful"*, as it is used in section 203 of the Labor Code, *does not mean that the refusal to pay wages must necessarily be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due, in order to subject him to the penalty.* In the case of *May v. New York Motion Picture Corp.*, 45 Cal. App. 396, 404 [187 Pac. 785], it was held that the term "*wilful" in its ordinary use, merely means that one intentionally fails or refuses to perform an act which is required to be done.* It is said in that regard:

"In civil cases the word *'wilful' as ordinarily used in courts of law*, does not necessarily imply anything blameable, or any malice or wrong toward the other party, or perverseness or moral delinquency, but *merely that the thing done or omitted to be done, was done or omitted intentionally. It amounts to nothing more than this: That the person knows what he is doing, intends to do what he is doing, and is a free agent.*" (Citing cases.)

*Davis v. Morris*, 37 Cal. App. 2d 269, 274-75 (1940) (emphasis added).

That said, the District Court's intent findings under the California Labor Code do not clear the intent hedgerows of § 523(a)(6). *In re Su*, 290 F.3d 1140, 1145 n. 3 (9th Cir. 2002). For that reason, issue preclusion does not apply to the element of a § 523(a)(6) (willful and malicious injury) action.

**C.    Section 523(a)(7)**

A discharge under section 727, 1141, 11921 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

...

(7) *to the extent such debt* is for a fine, penalty, or forfeiture *payable to and for the benefit of a governmental unit*, *and is not compensation for actual pecuniary loss*, other than a tax penalty--

(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition.

11 U.S.C. § 523(a)(7) (emphasis added).

Section 523(a)(7) has three elements: "[t]he debt must (1) be a fine, penalty, or forfeiture; (2) be payable to and for the benefit of a governmental unit; and (3) not constitute compensation for actual pecuniary costs. 11 U.S.C. § 523(a)(7)." *In re Albert-Sheridan*, 960 F.3d 1188, 1193 (9th Cir. 2020).

"Governmental unit" is a defined term.

The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title) a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

11 U.S.C. § 101(27).

> 1. **Is a civil penalty awarded to Private Attorney General Act plaintiffs, but for which the State of California is the real party in interest, excepted from discharge under 11 U.S.C. § 523(a)(7)?**

The sole issue is whether a judgment for civil penalties, rendered in favor of Private Attorney General Act plaintiffs, Cal. Labor Code §§ 2698 et seq., is a debt "payable to" a "governmental entity." 11 U.S.C. § 523(a)(7).[3] This question has not been resolved by the circuit. *Cf. In re Schimmels*, 127 F.3d 875, 880-882 (9th Cir. 1997) (assuming debts under the False Claims Act claim fell within § 523(a)(7)).

The phrase "payable to" is ambiguous as to whether the remittance must be immediate, i.e., paid directly to the governmental entity, or may be distant, i.e., paid to a third party who-—as the Cabardo plaintiffs put it--"split" the proceedings with the government entity, Pls.' Opp'n 7:20, 8:11, ECF No. 213.[4]  The problem is made worse by the

---

[3] All other elements of a § 523(a)(7) are established by taking judicia notice of the judgment and its contents.  Order ¶ 1, ECF NO. 177 (taking judicial notice of the judgment in *Cabardo v. Patacsil*, No. 2:212-cv-01705 (E.D. Cal. 2012)).  Private Attorney General Act, Cal. Labor Code § 2698 et seq., are penalties and not compensation for actual loss.  *Medina v. Vander Poel*, 523 B.R. 820, 825-826 (E.D. Cal. 2015); *see also Viking River Cruises, Inc. v. Moriana*, 213 L. Ed. 2d 179, 142 S. Ct. 1906, 1915, reh'g denied, 213 L. Ed. 2d 1145, 143 S. Ct. 60 (2022).  Moreover, there is no dispute that State of California Labor and Workforce Development Agency is a governmental unit, 11 U.S.C. § 101(27), and will receive and benefit from 75% of the civil penalty awarded.  *Vander Poel*, 523 B.R. at 826; Cal. Labor Code § 2699(i).

[4] Though tempting, the passive voice analysis (which signifies that the actor is unimportant or unknown), applied by the Supreme Court in

unique configuration of Private Attorney General Act cases among qui tam actions.  *Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668, 677 (9th Cir. 2021) (construing PAGA claims in conjunction with Art. III standing).  State and federal courts perceive the relationship between the State of California and Cabardo plaintiffs differently.  The State of California perceives the Cabardo plaintiffs its "agent" or "proxy." *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal.4th 348, 382 (2014); *Amalgamated Transit Union, Loc. 1756, AFL-CIO v. Superior Ct.*, 46 Cal. 4th 993, 1003 (2009).  In its view, the State of California is always the real party in interest.  *Iskanian*, 59 Cal.4th at 382; *Viking River Cruises Inv.*, 142 S.Ct. at 1914.  Federal courts have characterized Private Attorney General Act plaintiffs as full assignees.  *Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668, 677 (9th Cir. 2021); *Porter v. Nabors Drilling USA, L.P.*, 854 F.3d 1057, 1060 (9th Cir. 2017) (noting that state's lack of any control over the proceedings); *Viking River Cruises, Inv. V. Moriana,* 142 S.Ct. 1906, 1914 n. 2 (2022) ("[t]he extent to which PAGA plaintiffs truly act as agents of the State rather than complete assignees is disputed").

Mercifully, this court need not resolve the dispute over characterization of the relationship of the Private Attorney General Act plaintiffs and the State of California.  That is so because in other contexts, circuit precedent has consistently applied the

*Bartenwerfer v. Buckley*, 214 L. Ed. 2d 434, 143 S. Ct. 665, 670 (2023), to 11 U.S.C. § 523(a)(2)(A), is a red herring with respect to § 523(a)(7).  Section 523(a)(7) is not phrased in the passive voice. The "unfailing test" for passive voice is "a be-verb plus a past participle (usually a verb ending in -ed)."  B. Garner, *Modern English Usage* 483 (1998).  Here, the past participle is missing.  "Payable" is an adjective.  *Encyclopedic Unabridged Dictionary of the English Language* p. 1424 (1996).  "Pay" is an irregular verb; the past participle of "pay" is "paid," not "payable."  *Modern English Usage* 385-386.

"payable to" test to the end recipient of the funds sought to be excepted from discharge.  See *Albert-Sheridan v. The State Bar of California (In re Albert-Sheridan)*, 960 F.3d 1188 (2020)*; Scheer v. The State Bar of California (In re Scheer)*, 819 F.3d 1206, 1208-1209, 1211 (9th Cir. 2016); *Matter of Towers*, 162 F.3d 952, 955 7th Cir. 1998) ($210,000 restitution for civil fraud paid to the Attorney General of Illinois, who disbursed to victims, was not payable to a governmental unit); *In re Sandoval*, 541 F.3d 997 (2008) (guarantor's debt to reimburse bail bondsman for bond forfeiture to the State of Oklahoma not payable to a governmental unit).

In *Scheer*, an attorney represented a client in conjunction with a modification of a mortgage loan.  The client paid the attorney $5,500.  Later, the client fired the attorney and, by way of California's mandatory fee arbitration program, the client sought the refund of the $5,500 paid.  The arbitrator determined that the attorney violated California Civil Code § 2944.7(a) by receiving advanced fees for residential mortgage modification services and ordered the attorney to refund the entire $5,500 and also ordered the attorney to pay the client the $275 arbitration fee.  Those amounts totaled $5,775.  When the attorney failed to pay the client the $5,775, the State Bar suspended the attorney's right to practice law until she paid her former client all funds due and moved successfully for reinstatement to the bar.  The attorney filed Chapter 7 bankruptcy, properly scheduling both the former client and the State Bar as creditors.  The attorney received her discharge and then demanded reinstatement of her license under 11 U.S.C. § 525 (which prohibits any governmental entity from revoking or refusing to renew a license solely on the basis that the debtor has not repaid a discharged debt).  After the State Bar

14

refused to reinstate her license to practice law, the attorney filed
an adversary proceeding in the bankruptcy court against the State Bar
and its officials contending that the State Bar had violated 11 U.S.C.
§ 525(a) and 362.  The bankruptcy court and the district each rejected
her contention finding that the debt was excepted by § 523(a)(7).  The
circuit found that the debt to a former client did not fall within §
523(a)(7) and reversed and remanded the case.  The circuit described
the arbitration award as "a debt between two private parties, payable
to one of them."  p. 1209.  Notwithstanding The State Bar of
California's right to regulate practicing attorneys, the circuit
declined to cloak the funds due the client with the protection due
governmental units.

    *Albert-Sheridan* makes the point clearer still.  There, an
attorney, who specialized in representing consumers represented
residential tenants against their landlord.  The landlord filed an
unlawful detainer action against the tenants.  After one of the
tenants did not respond to discovery, the landlord filed three motions
to compel, which included a request for monetary sanctions (attorneys'
fees and costs) against the tenant and counsel.  Eventually, the state
court ordered discovery sanctions in favor of landlord and against
client and the attorney, jointly and severally, in the amount of
$5,738.  When the attorney did not pay those discovery sanctions, the
State Bar opened an investigation against her.  Ultimately, the State
Bar suspended the attorney's license and imposed $18,714 in
disciplinary costs.  As a condition of reinstatement of her license
The State Bar of California required the attorney to pay: (1) the
$18,714 disciplinary costs to it; and (2) to provide proof of payment
of the $5,738 plus 10% interest to the landlord.  The attorney filed a

Chapter 13 case, which was quickly converted to a Chapter 7 case; the attorney received her discharge, 11 U.S.C. § 727. The attorney then filed an adversary proceeding against The State Bar of California and its employees, arguing § 523(a)(7), 525(a) (antidiscrimination) and other violations. The bankruptcy court held that both the disciplinary costs and the discovery sanctions were discharged based on *In re Findley*, 593 F.3d 1048 (9th Cir. 2010). The bankruptcy court also dismissed the § 525(a) claim "because the State Bar could predicate [the attorney's] reinstatement on the payment of non-dischargeable debts." p. 1192. The attorney appealed to the Bankruptcy Appellate Panel, which affirmed. The attorney then appealed to the Ninth Circuit. There were two issues: (1) discharge of the $18,714 disciplinary costs due The State Bar of California; and (2) discharge of $5,738 in discovery sanctions due the landlord in the underlying action ordered by the California Superior Court. As to the $18,714 disciplinary costs due the State Bar, citing *Findley*, the circuit affirmed, holding that debt nondischargeable. As to the $5,738 in discovery sanctions due the landlord, the circuit reversed and remanded the case, holding the debt dischargeable. The circuit found that the debt was not payable to the governmental unit and was compensation for actual pecuniary loss.

> California law authorizes the award of "sanctions" for the "misuse of the discovery process." Cal. Civ. Proc. Code § 2023.030(a). A "court may impose a monetary sanction ordering that one engaging in the misuse of the discovery process, or any attorney advising that conduct, or both pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct."

> By its terms, the law does not provide for the sanctions to be paid to the court or any other governmental entity, but to "anyone" incurring an expense as a result of discovery abuse...

> Here, Albert was ordered to pay the discovery sanctions to
> "Plaintiff 10675 S. Orange Park Boulevard, LLC." Orange
> Park Boulevard is not a governmental unit, nor was the
> sanction for the benefit of a governmental unit.
> Accordingly, the discovery sanctions are not payable to or
> for the benefit of a governmental unit.

*Id.* at 1193 (internal citation omitted).

*Scheer* and *Albert-Sheridan* teach us that in determining whether a civil penalty is "payable to," 11 U.S.C. § 523(a)(7), the analysis is applied to the end recipient of the funds.[5] Certainly, both *Scheer* and *Albert-Sheridan* apply the end recipient as a rule of exclusion. And the case now before the court applies the end recipient as a rule of inclusion. But this court believes the principle applies with equal force, without regard to the direction in which it cuts.

Applying that analysis here, the majority (75%) of the civil penalties will be paid to the Labor and Workforce Development Agency. Cal. Labor Code § 2699(i). And the District Court judgment so states. As a result, the civil penalties payable to a governmental unit fall within § 523(a)(7), notwithstanding that it was recovered by a qui tam plaintiff.[6]

---

[5] Concededly, criminal restitution payments are treated differently. Kelly v. Robinson, 479 U.S. 365 (1986). But the Ninth Circuit has consistently refused to apply *Kelly* to civil restitution payments. *Albert-Sheridan v. The State Bar of California (In re Albert-Sheridan),* 960 F.3d 1188 (2020); *Scheer v. The State Bar of California (In re Scheer)*, 819 F.3d 1206, 1208-1209, 1211 (9th Cir. 2016).

[6] A large body of case law applying § 362(b)(4) (exceptions to the stay) almost always finds that qui tam plaintiffs may not avail themselves of that provision. *Porter v. Nabors Drilling USA, L.P.*, 854 F.3d. 1057 (9th Cir. 2017) (Private Attorney General Act plaintiffs not entitled to assert exception to stay, 11 U.S.C. § 362(b)(4)); *In re Wade*, 948 F.2d 1122 (9th Cir. 1991) (State Bar of Arizona excepted from stay, 11 U.S.C. § 362(b)(4); *In re Revere Copper and Brass, Inc.*, 32 B.R. 725 (S.D. N.Y. 1983) (private attorney generals not entitled to avail themselves of §362(b)(4)); *contra U.S. ex rel. Doe v. X, Inc.*, 246 B.R. 817, 820 (E.D. Va. 2000). In doing so, those cases rely heavily on the government's lack of involvement in the prosecution of the qui tam action. *Porter*, 854 F.3d at 1062-1063. This court believes those cases are distinguishable. The focal point of each statute and the prepositions used, *In re AE Bicycle Liquidation, Inc.*, 612 B.R. 330, 336 n. 6 (Bankr. M.D. N.C. 2019) (describing the differences in prepositions used), suggest opposite constructions. Section 523(a)(7) looks

**2.    How much of the civil penalty awarded to Private Attorney General Act plaintiffs as a part of a prepetition judgment fall non-dischargeable under Section 523(a)(7)?**

Having determined that § 523(a)(7) applies to civil penalties awarded Private Attorney General Act plaintiffs, what is the amount of the penalties that may be excepted: the entire amount or only 75%?

This court finds that only 75% of the penalties may be excepted. Applying the plain meaning approach, *Ron Pair Enterprises, Inc.*, 489 at 241, the court notes that the § 523(a)(7) only excepts "A discharge ...does not discharge an individual debtor from any debt--...... *to the extent such debt* is for a fine, penalty, or forfeiture *payable to and for the benefit of a governmental unit*..." 11 U.S.C. § 523(a)(7) (emphasis added). Only 75% of that amount will inure to the benefit of the State of California. Cal. Labor Code 2699(i).

Few, if any, cases directly have considered the amount of a civil penalty that may be excepted from discharge under § 523(a)(7) when a qui tam relator and a governmental unit split the amount awarded. But long-standing case law in other contexts restricts the fines, penalties and forfeitures excepted from discharge to the amount that the governmental unit retains. *Matter of Towers*, 162 F.3d 952, 955-956 (7th Cir. 1998) ($50,000 penalty due the state excepted from discharge, but $210,000 restitution paid to the State of Illinois for disbursement to victims was discharged); *In re Stevens*, 184 B.R. 584 (Bankr. W.D. Wash. 1995) (county to receive "100% of sums the defendant collects"); *In re Sanders*, 589 B.R. 874, 880 n. 4 (Bankr.

---

to the character of the debt, not to the actor. Debts must be "payable to and for the benefit of a governmental unit." Just to the opposite is the thrust of § 362(b), which focuses on the actor, and not on the debt. That statute excepts from the stay, "the commencement or continuation of an action or proceeding by a governmental unit" in the exercise of its police powers.

W.D. Wash. 2018) (same); *In re Dickerson*, 510 B.R. 289, (Bankr. D. Idaho 2014) (collection costs due the third-party collectors); *Kish v. Farmer (In re Kish)*, 238 B.R. 271, 286 (Bankr. D.N.J. 1999) (surcharges arising from vehicle fines not "for the benefit of the government").[7]

Applying the principles of claim preclusion to the judgment, the amount of the civil penalties that may be excepted under § 523(a)(7) is only the amount due the California Labor and Workforce Development Agency; that amount is $59,643.[8]  Cal. Labor Code § 2699(i).

> **3.   Are attorneys' fees awarded to successful Private Attorney General Act plaintiffs as a part of a prepetition judgment made non-dischargeable by Section 523(a)(7)?**

The Cabardo plaintiffs contend that issue preclusion applies to except the attorneys' fees, $1,077,218, awarded to them from discharge under § 523(a)(7).  Joint Mot. to Determine Facts 5:23-24, ECF No. 117; Joint Resp. Req. Further Br. 21:18-25:13, ECF No. 188.  The plaintiffs advance two arguments: (1) that the attorneys' fees are ancillary to the judgement, and flow from it; and (2) they are penal in nature and, therefore, may be paid to a private party.  *Id.*

This court disagrees.  It is beyond question that a prevailing party under most—perhaps all, provisions of § 523(a), may recover attorneys' fees as a component of damages, provided they could recover them outside bankruptcy.  *Cohen v. de la Cruz*, 523 U.S. 213 (1998) (11 U.S.C. § 523(a)(2)(A)); *In re Zito*, 604 B.R. 388 (9th Cir BAP 2019) 11

---

[7] Any argument that *Kelly v. Robinson*, 479 U.S. 36 (1986) (excepting criminal restitution under § 523(a)(7)) also excepts civil penalties as restitution is foreclosed by *In re Scheer*, 819 F.3d 1206, 1209 (9th Cir. 2016); *In re Albert-Sheridan*, 960 F.3d 1188, 1194-1195 (9th Cir. 2020); *In re Parsons*, 505 B.R. 540, 544-545 (Bankr. D. Haw. 2014).

[8] That amount is $79,524 multiplied by 75%.  Cal. Labor Code § 2699 (i).

U.S.C. § 523(a)(3)).  Ordinarily, there are two prerequisites: "(1) an underlying contract or nonbankruptcy law must provide a right to recover attorneys' fees, and (2) the issues litigated in the dischargeability action must fall within the scope of the contractual or statutory attorneys' fees provision."  *In re Saccheri*, No. ADV 09-1273, 2012 WL 5359512, at *13 (B.A.P. 9th Cir. Nov. 1, 2012), aff'd, 599 F. App'x 687 (9th Cir. 2015).

Admittedly, a qui tam plaintiff's right to except attorneys' fees for pursuing civil penalties payable to the sovereign from discharge under § 523(a)(7) has not been well litigated.  But this court does not believe that *Cohen* overrides specific and clear requirements of § 523(a)(7), which limits the species of damages (including attorneys' fees) that are excepted from discharge and the recipient of those funds.  *Compare Cohen*, 523 U.S. at 222 (referring to § 523(a)(7)) with *Hughes v. Sanders*, 469 F.3d 475, 477-479 (6th Cir. 2006) (omitting reference to *Cohen* and finding attorneys' fees to be discharged notwithstanding § 523(a)(7)) with *Searcy v. Ada County Prosecuting Attorney's Office (In re Searcy)*, 463 B.R. 888 (2012) (excepting costs and attorney's fees due county for inmate's unsuccessful action against it under § 523(a)(7)).  As the Supreme Court said in *Cohen*:

> *If, as petitioner contends, Congress wished to limit the exception to that portion of the debtor's liability representing a restitutionary—as opposed to a compensatory or punitive—recovery for fraud, one would expect Congress to have made unmistakably clear its intent to distinguish among theories of recovery in this manner.* See, e.g., § 523(a)(7) (barring discharge of debts "for a fine, penalty, or forfeiture payable to ... a governmental unit," but only if the debt "is not compensation for actual pecuniary loss").

*Id.* at 222 (emphasis added).

This court believes that congress has done just that, i.e.,

20

limited the recovery that may be had, in § 523(a)(7). The Cabardo

plaintiffs face two hurdles. Both are insurmountable. At the outset,

the attorney's fees were awarded to private parties, or their counsel,

and not a governmental unit. Courts that have faced the question of

whether an individual, rather than the government, may except

attorneys' fees from discharge under § 523(a)(7) have declined to do

so. *In re Albert-Sheridan*, 960 F.3d 1188, 1193-1196 (9th Cir. 2020)

(attorneys' fees and costs awarded as discovery sanctions due in

underlying litigation); *Hughes v. Sanders*, 469 F.3d 475, 477-479 (6th

Cir. 2006) (attorneys' fees and costs payable to former client were

not payable to and for the benefit of the government and was

compensation for actual pecuniary loss); *In re Carpenter*, 2011 WL

841473 *2-3 (Bankr. D.C. March 8, 2011) (judgment for oral

construction project including $3,000 attorneys' fees); *In re Luca*,

422 B.R. 772, 777-778 (Bankr. M.D. Fl. 2010); *In re Stutz*, 154 B.R.

508 (Bankr. N.D. Ind. 1993) (pre-*Cohen*).

In *Hughes* the Sixth Circuit Court of Appeals considered a legal

malpractice case. There, an attorney, Sanders, sued Ford Motor

Company on behalf of a client, Hughes, in connection with an

employment problem. After Hughes lost, he sued Sanders for

malpractice in District Court. During the malpractice action, Sanders

violated court orders (including discovery orders) and orders to

appear. Eventually, the District Court struck Sanders' answer and

took his default. The District Court scheduled a hearing on damages

at which Sanders failed to appear. The District Court awarded Hughes:

$894,316 as damages (lost wages and interest in the underlying case);

$143,602 in attorney's fees and costs in the underlying case; and

$25,873 for attorneys' fees and costs in the malpractice case.

Sanders filed a Chapter 7 case and Hughes brought an action to except

the debt from discharge under § 523(a)(7).  Sanders filed a motion to

dismiss under Federal Rule of Civil Procedure 12(b)(6) and the

District Court "reluctantly granted the motion."  The Sixth Circuit

affirmed.  In doing so, the court found that the judgment was payable

to Hughes, who is not a governmental unit and that it was calculated

to compensate Hughes for the damages incurred.  The Sixth Circuit

stated:

> *Under the plain language of 11 U.S.C. § 523(a)(7), Hughes*
> *cannot prevail unless he can show both that the penalty*
> *owed by Sanders is payable to and for the benefit of a*
> *governmental unit. Here, he can show neither. It is*
> *undisputed that the penalty is payable to Hughes. And it is*
> *undisputed that the judgment is for an amount calculated to*
> *compensate Hughes for damages, attorney's fees and costs*
> *claimed in and arising out of the malpractice action.* He
> therefore has not stated and cannot state a claim for which
> relief can be granted.
>
> We note that even if we were to accept Hughes's contention
> that the judgment is payable "to and for the benefit of a
> governmental unit," Hughes cannot prevail. *The final*
> *requirement under 11 U.S.C. § 523(a)(7) for excepting a*
> *debt from discharge is that the debt is "not compensation*
> *for actual pecuniary loss." In this case, the debt owed by*
> *Sanders was a default judgment in an amount explicitly*
> *calculated to compensate Hughes for* malpractice damages,
> litigation costs and *attorney's fees.* That the judgment is
> a default judgment entered by the district court in part as
> a sanction for Sanders's inexcusable and unprofessional
> conduct does not change the judgment's compensatory
> character.

*Id.* at 479 (emphasis added).

Here, the attorneys' fees are due the Cabardo plaintiffs, or

their counsel, but not the government.

> [A]n aggrieved employee may recover the civil penalty
> described in subdivision (f) in a civil action pursuant to
> the procedures specified in Section 2699.3 filed on behalf
> of himself or herself and other current or former employees
> against whom one or more of the alleged violations was
> committed. *Any employee who prevails in any action shall be*
> *entitled to an award of reasonable attorney's fees and*
> *costs...*

Cal. Labor Code § 2699(g)(1) (emphasis added).

But there is more. In order to qualify for exception to discharge (including attorneys' fees) under § 523(a)(7) the debt must not be compensatory. *Hughes v. Sanders*, 469 F.3d 475, 477-479 (6th Cir. 2006); *In re Parsons*, 505 B.R. 540 (Bankr. D. Haw. 2014) (attorneys' fees due the Hawaii Office of Consumer Protection was a pecuniary loss because "the time expended by OCP's counsel could have been devoted to other cases"). As the *Hughes* court phrased it:

> The final requirement under 11 U.S.C. § 523(a)(7) for excepting a debt from discharge is that the debt is "not compensation for actual pecuniary loss." In this case, the debt owed by Sanders was a default judgment in an amount explicitly calculated to compensate Hughes for malpractice damages, litigation costs and attorney's fees.

*Hughes*, 469 F.3d at 475.

Here, the District Court's award of attorneys' fee was based on the lodestar method and was designed to compensate the Cabardo plaintiffs and their counsel for the time and effort expended in prosecuting the underlying District Court action. Attorneys' fees may not be excepted under 523(a)(7).

**VI.  Conclusion**

For each of these reasons, the motions will be granted in part and denied in part. As to the existence and amount of "debt" owed by the defendants to the plaintiffs, 11 U.S.C. §§ 523(a), 101(5), (12), issue preclusion applies and bars the defendants from re-litigating the existence of a debt from the defendants to the plaintiffs or the amount of that debt.

As to § 523(a)(6), there is not issue identity with respect to the intent element, i.e., willful and malicious, and issue preclusion is not applicable. As a result, the remaining issue (intent) must be

1  resolved by trial.

2       As to § 523(a)(7), issue identity exits as to the civil penalty.

3  As to the 75% due the State of California, Cal. Labor Code § 2699

4  (g)(1), issue preclusion applies and bars relitigating that issue.

5  And that amount will be excepted from discharge, but only as to the

6  State of California.  As to the remaining 25% of the civil penalty due

7  the plaintiffs and as to the attorneys' fee awarded, § 523(a)(7) does

8  not except those amounts from discharge.

9       The court will issue an order from chambers.

10  **Dated:** June 09, 2023

11

12  _____

13  **Fredrick E. Clement**
    **United States Bankruptcy Judge**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| Attorneys for the Plaintiff(s) | Attorneys for the Defendant(s) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | **Office of the U.S. Trustee**<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA  95814 |